# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID JOHNSON, | : | |
|     Plaintiff, | : | No. 3:18-cv-1475 (SRU) |
| | : | |
| v. | : | |
| | : | |
| KING, et al., | : | |
|     Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

David Johnson ("Johnson"), currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 challenging a disciplinary proceeding and his classification. The named defendants are Lieutenant King, Correctional Officer Harris, Correctional Officer Tardif, Lieutenant Papoosha, Edward Maldonado, Warden Feliciano, Warden W. Mulligan, Captain John Doe, Director Santiago, Commissioner Scott Semple, Captain Walsh, and C.S. Stanley. Johnson seeks damages as well as declaratory and injunctive relief. The complaint was received on August 31, 2018, and Johnson's motion to proceed *in forma pauperis* was granted on September 10, 2018.

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based, and must demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S.

544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**I.     Allegations**

On November 18, 2016, Johnson was admitted to Bridgeport Correctional Center ("Bridgeport") as a pretrial detainee. ECF No. 1 at 6, ¶¶ 2-3. He remained in general population at Bridgeport until January 23, 2017, when defendant Papoosha placed him in segregation on administrative detention status pending investigation into disciplinary charges. *Id.* at 6-7, ¶¶ 4-8. On January 25, 2017, Johnson received a disciplinary report, signed by defendants Papoosha and Tardif, charging him with Security Risk Group Affiliation. *Id.* at 7, ¶¶ 12-13 & Ex. 1.

At no time since his admission, did Johnson provide acknowledgement that correctional staff could listen to and record his personal calls or read his personal correspondence. *Id.* at 8, ¶ 14. The disciplinary report did not list any witnesses or describe any physical evidence, which prevented Johnson from preparing a defense. *Id.*, ¶¶ 15-16. The report did not cite the language that was considered a gang identifier, describe the letters or item found during the shakedown of Johnson's cell, or indicate the date of the offense. *Id.* at 9, ¶¶ 18-21.

Johnson pleaded not guilty to the charge, declined services of an advocate, requested certain inmate witnesses, and requested a copy of all evidence against him. *Id.* at 10, ¶¶ 23-24.

Disciplinary investigator Harris made no record of Johnson's requests, did not interview Johnson's witnesses and did not arrange for the witnesses to appear at the disciplinary hearing. *Id.*, ¶¶ 25-26. Instead, defendant Harris arranged for the hearing to take place beyond the required timeframe, at a time when the witnesses were not available, and failed to provide Johnson the required notice of the date and time of the hearing. *Id*. at 10-11, ¶¶ 27-29.

Hearing Officer Lieutenant King denied Johnson a copy of the evidence and denied his requests for witnesses. *Id*. at 11-12, ¶¶ 31-32. She rejected his argument that the charge was overly broad and vague. *Id.* at 12, ¶¶ 33-35. Defendant King found Johnson guilty of the charge. *Id.*, ¶ 36. At no time during the hearing did defendant King tell Johnson or provide him any notice that, as a result of this disciplinary finding, he would be designated a Security Risk Group ("SRG") member. *Id*. at 13, ¶¶ 39-40.

On March 5, 2017, Johnson was transferred to MacDougall-Walker Correctional Institution and placed on administrative segregation status as a designated Security Risk Group member. *Id.*, ¶ 41. The conditions of confinement were "quantitatively and qualitatively different" from the conditions in general population. *Id.* at 14, ¶ 42.

On February 19, 2017, Johnson appealed the disciplinary finding to Director Maldonado. *Id*., ¶ 45. The appeal was denied on March 29, 2017, well beyond the period permitted for decision of an appeal. *Id.* at 15, ¶ 48.

On March 17, 2017, Johnson posted bail and was released from custody. *Id.*, ¶ 50. He was re-arrested on December 17, 2017, and admitted at New Haven Correctional Center as a pretrial detainee. *Id.*, ¶¶ 51-52. In accordance with Department of Correction policy, he was returned to segregation as a designated SRG member. He was not provided notice or a hearing

3

before the designation. *Id.* at 15-16, ¶ 53. Defendants Feliciano, Santiago, and Doe formally re-assigned Johnson to segregation as an SRG member on December 19, 2017, without notice or a hearing. *Id*. at 16, ¶ 55. Defendants Semple, Santiago, Walsh, Stanley, Mulligan, Feliciano, and Doe have refused to afford Johnson notice and a hearing regarding his re-assignment to segregation as an SRG member. *Id.*, ¶ 54. On December 29, 2017, Johnson was transferred back to the Walker building at MacDougall-Walker Correctional Institution. *Id.* at 16-17, ¶ 56.

## II. <u>Analysis</u>

Johnson asserts three claims in this action: (1) denial of procedural due process in conjunction with the disciplinary hearing; (2) classification as an SRG member without notice and a classification hearing; and (3) return to SRG status upon re-admission into custody without notice or a hearing.

### A. <u>Disciplinary Hearing</u>

Johnson first argues that defendants King, Harris, Tardif, Papoosha, and Maldonado denied him procedural due process in connection with the disciplinary hearing. He contends that he was unable to present a defense because the disciplinary report did not list any witnesses, describe any physical evidence, or identify the language considered to be a gang identifier, and he was not provided any of this information prior to the hearing.

Johnson was a pretrial detainee at all times relevant to this action. As a result of the hearing, he was transferred to restrictive housing in the SRG Program. "[The Second] Circuit has found that procedural due process requires that pretrial detainees can only be subjected to segregation or other heightened restraints if a predeprivation hearing is held to determine whether any rule has been violated." *Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) (citing

4

*Benjamin v. Fraser*, 264 F.3d 175, 189-90 (2d Cir. 2001)). Where, as with the disciplinary hearing in this case, the purpose of the detention is punitive, the hearing must comply with the standard in *Wolff v. McDonnell*, 418 U.S. 539 (1974), which requires written notice, time to prepare a defense, a written statement of the reasons for the decision, and a limited right to present witnesses. *Benjamin*, 264 F.3d at 190. The notice provided must be sufficient to enable the inmate to prepare a defense to the charge. *Taylor v. Rodriguez*, 238 F.3d 188, 192-93 (2d Cir. 2001).

Johnson alleges that the notice he received was insufficient for him to prepare a defense. He also alleges that the scheduling of the hearing was manipulated to prevent him from calling witnesses. Because Johnson alleges that he was not afforded the protections identified in *Wolff*, his due process claim will proceed.

B. Classification

In his second claim, Johnson challenges his classification as an SRG member without a separate classification hearing. He alleges that, although defendant King found him guilty of the SRG charge, she at no time informed him that he would be designated as an SRG member as a result of the disciplinary finding, did not make a separate SRG finding, and did not order sanctions of SRG placement. Defendant Maldonado did not correct this error on appeal of the disciplinary finding.

Before he can argue that he was denied due process in connection with his classification, Johnson must have a liberty interest in avoiding classification as an SRG member. Conditions of pretrial detention do not give rise to a due process violation unless the conditions are punitive. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979)("In evaluating the constitutionality of conditions

or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."). Johnson alleges that his classification was the result of the disciplinary finding. Thus, the Court assumes that the classification was punitive.

Johnson alleges that he was not told that the disciplinary hearing was also a classification hearing and never received written notice of his designation.[1] Because the classification was punitive, Johnson was again entitled to the protections in *Wolfish*. Absent knowledge that the disciplinary hearing was also a classification hearing, it appears that Johnson did not have an opportunity to defend against the classification change. Because the Court cannot determine whether Johnson received appropriate process, that claim will proceed.

C. Re-Admission

Finally, Johnson challenges his return to the SRG program upon re-admission without notice and a hearing. He alleges that defendants Semple, Santiago, Walsh, Stanley, Mulligan,

---

[1] The Court takes judicial notice of Department of Correction Administrative Directive 6.14, Section 7(B) provides:
> An inmate shall also be designated as a Security Risk Group Member when the inmate is found guilty of the charge of Security Risk Group Affiliation in accordance with Administrative Directive 9.5, Code of Penal Discipline. In this case, the disciplinary report shall act as the notification of the pending placement hearing. No hearing other than the one provided for in Administrative Directive 9.5, Code of Penal Discipline, shall be required when such designation is based on the offense of Security Risk Group Affiliation. In addition to any notification requirement in accordance with Administrative Directive 9.5, Code of Penal Discipline, the Hearing Officer shall notify the inmate in writing of the inmate's designation as a Security Risk Group Member, utilizing form CN 61404, Security Risk Group Member Notification of Decision.

Feliciano, and Doe are involved in that claim.

Johnson was re-assigned to the SRG Program on December 19, 2017. About a month earlier, the Second Circuit held that Connecticut Department of Correction officials violated an inmate's substantive due process rights when they returned him to the Administrative Segregation Program upon re-admission to custody as a pretrial detainee without affording him notice and a hearing. *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 57-58 (2d Cir. 2017). Based on this decision, Johnson has alleges sufficient facts for the case to proceed on this claim.

## CONCLUSION

The Court enters the following orders:

(1) **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain the service or current work address for each defendant, mail a waiver of service of process request packet containing the complaint to him or her at the address provided within **twenty-one (21) days** of this Order, and report to the Court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55

Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within **thirty (30) days** from the date of this Order.

       (3)      **The Clerk shall** send the plaintiff a copy of this Order.

       (4)      **The Clerk shall** send a courtesy copy of the complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

       (5)      The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

       (6)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the court.

       (7)      All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

       (8)      Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

       (9)      If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.

It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. The plaintiff is advised that the Program may be used only to file documents with the Court. Local Court rules provide that discovery requests are not filed with the Court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

(11) The Court cannot effect service on defendant Unit Manager Doe without his name and current work address. The plaintiff is directed to obtain this information during discovery and file a notice containing the information. Once the notice is filed, the Court will order service on defendant Doe.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of September 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge