# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID JOHNSON, : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 3:18-cv-1475 (SRU) |
| : | |
| KING, et al., : | |
| Defendants. : | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

David Johnson ("Johnson"), commenced this civil rights action challenging his designation as a Security Risk Group ("SRG") member in February 2017, and his return to the SRG Program upon re-admission to the custody of the Department of Correction in December 2017. The defendants move for summary judgment on the grounds that Johnson failed to exhaust his administrative remedies, the defendants did not deny Johnson due process, the defendants are protected by qualified immunity, and Johnson has not established the personal involvement of several defendants. For the following reasons, the defendants' motion is **granted in part** and **denied in part.**

I.  Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record

in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). In the context of cross-motions for summary judgment, the same standard is applied. *See Scholastic, Inc. v. Harris*, 259 F.3d 73, 81 (2d Cir. 2001). However, in deciding each motion, the court must construe the evidence in the light most favorable to the non-moving party. *Id.*

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Regarding materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

II.   Facts[1]

In January 2017, correctional staff found hand-drawn gang symbols in Johnson's cell and

---

[1] The facts are taken from the defendants' Local Rule 56(a)1 Statement and attached exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3.

The defendants informed Johnson of that requirement, Doc. No. 36-19. Although Johnson was granted an extension of time, until July 31, 2019, to respond to the motion, he has not submitted a Local Rule 56(a)2 Statement. Thus, the defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2."). Because the Complaint is verified, the Court considers the allegations in reviewing the motion for summary judgment.

intercepted two letters sent by Johnson that contained gang-identifying information. Doc. No. 36-18. ¶ 1. Department of Correction Administrative Directive 6.14(7)(A) prohibits possession of gang-identifying material. *Id.* ¶ 2. That material is defined in the Code of Penal Discipline as "any materials, symbols, colors or pictures of any identified security risk group, or behaviors uniquely or clearly associated with a security risk group." *Id.* ¶ 3.

Johnson was previously identified as an SRG Crips member and completed the SRG Program in August 2015. *Id.* ¶ 4. An SRG is defined in Administrative Directive 6.14(3)(H) as a "group of inmates, designated by the Commissioner, possessing common characteristics, which serve to distinguish them from other inmates or groups of inmates and which as a discrete entity, jeopardizes the safety of the public, staff, or other inmate(s) and/or the security and order of the facility." *Id.* ¶ 5. SRG members are inmates affiliated with an SRG. *Id.* ¶ 6.

When an inmate is found to be an SRG member following a hearing, he is placed in the five-phase SRG Program. As inmates pass through the phases, they can withdraw from gang life and be re-integrated into the general prison population. *Id.* ¶ 7. The Administrative Segregation Program is intended to segregate an inmate from general population, usually because the inmate has committed a violent offense. *Id.* ¶ 8. Although both programs confine inmates in restrictive housing, the SRG inmates pose a greater danger to the overall safety of the facility and the community because gang activities are interconnected and perpetual. *Id.* ¶ 9.

On January 25, 2017, Johnson received a disciplinary report. *Id.* ¶ 10. The incident report underlying the disciplinary charge described the gang-related items found in Johnson's possession. *Id.* ¶ 11. The two letters included Crips-identifying language, including the use of "wats" for "what's" to show that Johnson had an affinity for the Grape Street Crips, located in

4

the Watts neighborhood in Los Angeles, and the elimination of the letters "ck" from words because the letters represent "Crip Killer" to any Crips member. *Id.* ¶ 12. A drawing of a cluster of grapes with "Dr. Watt" written underneath, further showing affinity for the Grape Street Crips was found in Johnson's cell. *Id.* ¶ 13.

When Johnson was shown the drawing, he said the grapes were intended to be drops of blood. Staff, however, found a second drawing of a bunch of grapes with the word "grape" written underneath. *Id.* ¶ 14. Johnson told officers that the items belonged to him and that his nickname was "Dr. Watt." *Id.* ¶ 15. Johnson was placed on Administrative Detention pending an investigation into his involvement or association with the SRG Crips. *Id.* ¶ 16.

On January 30, 2017, Johnson was issued an SRG Hearing Notification, which formally notified him that two letters containing Crips identifiers were intercepted from him and that other Crips identifiers had been found in his cell. *Id.* ¶ 17. The Hearing Notification informed Johnson that, if he was designated an SRG member, he would be subject to the sanctions and conditions of confinement listed in Administrative Directive 6.14 and would be ineligible to earn Risk Reduction Earned Credit. *Id.* ¶ 18. The Hearing Notification also listed factors particular to Johnson that would be considered at the hearing, including "information from telephone and/or mail monitoring," "security risk group picture," and "possession of security group material." *Id.* ¶ 19. Johnson signed the Hearing Notification acknowledging receipt of the document. *Id.*

The same day, Disciplinary Investigator defendant Harris met with Johnson to review the disciplinary investigation report. *Id.* ¶ 20. Johnson declined an advocate and witnesses and said that he would make a statement at the hearing. *Id.* ¶ 21. Johnson checked the boxes and signed

5

the form showing his decision to decline both assistance of an advocate and the opportunity to call witnesses. *Id.* ¶ 22. The hearing afforded Johnson an opportunity to refute the evidence of SRG involvement. *Id.* ¶ 25. At the February 15, 2017 hearing, Johnson was found guilty on the charge of possessing gang-related materials. *Id.* ¶ 26.

On the same day as the hearing, Johnson was informed that he had been designated an SRG Crips member and was placed in the SRG Program. *Id.* ¶ 27. On March 5, 2017, Johnson was transferred from Bridgeport Correctional Center to MacDougall-Walker Correctional Institution to begin the SRG Program. *Id.* ¶ 28. Defendant Maldonado denied Johnson's appeal of his SRG designation. *Id.* ¶ 29. Twelve days later, Johnson was released from custody. *Id.* ¶ 30. He had not completed the SRG Program which is designed to be completed in a minimum of one year. *Id.* ¶ 31.

Nine months later, on December 18, 2017, Johnson was readmitted into custody. *Id.* ¶ 33. In accordance with Administrative Directives 6.14(19) and 9.4(18), Johnson was notified that a review would be conducted to determine whether he should remain in the SRG Program and, if so, at which phase he should be admitted. *Id.* ¶ 34. Following the review, Johnson was notified that he would return to the SRG Program at Phase Two. *Id.* ¶ 35.

III. <u>Discussion</u>

There are two claims in this case. First, Johnson argues that he was denied due process in connection with his designation as an SRG member in February 2017. Second, he challenges his re-admission into the SRG program in December 2018. The defendants move for summary judgment on four grounds: (1) Johnson failed to exhaust his administrative remedies, (2) the

defendants did not deny Johnson due process, (3) the defendants are protected by qualified immunity, and (4) Johnson has not established the personal involvement of several defendants.

    A.    <u>Exhaustion of Administrative Remedies</u>

The defendants first argue that Johnson failed to exhaust his administrative remedies with regard to the re-admission claim before filing suit. The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out . . . (so that the agency addresses the issues on the merits) . . . [and] demands compliance with agency deadlines and other critical procedural rules"). An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendants

7

bear the burden of proof. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 247-48 (S.D.N.Y. 2003) (citing *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999)). The defendants contend that Johnson did not appeal his SRG placement in December 2018 and, therefore, did not properly exhaust his administrative remedies. They cite, generally, the declaration of Captain Acus to support that statement.

In his declaration, Captain Acus clearly states that Johnson exhausted his administrative remedies regarding his challenge to the February 2017 SRG placement. Defs. Mem. Ex. M, Acus Decl., Doc. No. 36-14, ¶ 6. Regarding the December 2017 re-admission, however, Captain Acus merely acknowledges that Johnson challenges his placement. *Id.* ¶ 7. He does not state whether he even checked institutional records to determine if Johnson filed an appeal of his re-admission to the SRG Program. The lack of any mention of an appeal in the declaration does not support an inference that Johnson failed to exhaust his administrative remedies. Because the defendants bear the burden of proof on that defense and have submitted no evidence on the issue, the motion for summary judgment is denied on the ground that Johnson failed to exhaust his administrative remedies on the December 2017 re-admission to the SRG Program.

### B. Qualified Immunity

The defendants also argue that they are protected by qualified immunity from Johnson's claim regarding re-admission to the SRG Program. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)).  Qualified immunity is not available if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).  The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first.  *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson*, 555 U.S. at 236).

Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions."  *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)).  "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'"  *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

Recently, the Supreme Court addressed the issue of qualified immunity and stated that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'"  *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742); *see also City of Escondido v. Emmons*, ___ U.S. ___, 139 S. Ct. 500, 503 (2019) ("Under our cases, the clearly established right must be defined with specificity.  'This Court has repeatedly told courts … not to define clearly established law at a low level of generality.'") (quoting *Kisela v. Hughes*, 584 U.S. ___, 138 S. Ct. 1148, 1152 (2018) (per curiam)).  The legal principle at issue must clearly prohibit the officer's conduct in the particular circumstances before him.  *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct.

9

577, 590 (2018); *see also Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) ("rights are only clearly established if a court can 'identify a case were an officer acting under similar circumstances' was held to have acted unconstitutionally") (quoting *White*, 137 S. Ct. at 552). However, it is not necessary to identify a decision squarely on point to defeat qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . .").

In considering whether a right is clearly established, the court must consider Supreme Court or Second Circuit cases and determine what a reasonable officer would understand in light of that law. *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014); *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("district court decisions—unlike those from the courts of appeal—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity."). The court considers whether a holding prohibits the conduct in question as well as whether decisions clearly foreshadow such a ruling. *Terebesi*, 764 F.3d at 231. Absent a "case of controlling authority" or "a consensus of cases of persuasive authority," the officers "cannot have been 'expected to predict the future course of constitutional law.'" *Wilson v. Layne*, 526 U.S. 603, 617 (1999) (quoting *Procunier v. Navarette*, 434 U.S. 555, 562 (1978)).

The Second Circuit considered a similar due process claim in *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48 (2d Cir. 2017). Allah, a pretrial detainee, had been returned to the Administrative Segregation Program upon re-admission to custody simply because he had been in the Administrative Segregation Program when he was last discharged from custody and had not completed the program before he was discharged. *Id.* at 52. The Second Circuit held that the

defendants violated Allah's substantive due process rights because the placement was punitive; it was not the result of any individualized assessment of Allah's risk to the security of the facility. *Id.* at 56-58. The Second Circuit also held that the defendants were protected by qualified immunity because reasonable officers would not have understood that following established correctional protocol of returning a readmitted inmate to the status he had on discharge without any individualized assessment of the risk posed by the inmate was unconstitutional. *Id.* at 58-59.

The defendants attempt to distinguish *Allah* because the program there was the Administrative Segregation Program rather than the SRG Program. By limiting *Allah* to its facts and restricting the right to protection from automatic return to the Administrative Segregation Program, the defendants are defining the right at issue too narrowly.

The Second Circuit focused on the fact that restrictions imposed on pretrial detainees do not comport with substantive due process if they are "imposed for the purpose of punishment and not as an incident of some other legitimate penological purpose." *Id*. at 55 (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979) (internal quotation marks omitted)). Because correctional officials made no individualized assessment of the risk Allah currently posed, their actions were unconstitutional. *Id.* at 56. The Second Circuit acknowledged that failure to complete a restrictive housing program before discharge could "serve as a useful rule of thumb for determining when an inmate who has previously been identified as a security risk is sufficiently rehabilitated," but noted that such a rule cannot be applied inflexibly. *Id.* at 57.

In this case, the defendants are alleged to have applied the directive inflexibly and returned Johnson to the SRG Program solely because he did not complete the program before he discharged. They did not make an individualized determination whether placement continued to

11

be warranted. Because *Allah* was decided a month before Johnson was returned to the SRG program, the defendants were on notice that the practice was unconstitutional. *See Pena v. Semple*, 2019 WL 1317920, at *3 (D. Conn. Mar. 22, 2019) (holding that "[a]fter *Allah* however, it is clear that [returning a pretrial detainee to the SRG Program upon re-admission] violates a pretrial detainee's substantive due process rights under the Fourteenth Amendment" but concluding defendants were protected by qualified immunity because actions occurred before *Allah* decision was issued).

The defendants also argue that one month is not sufficient time to revise prison directives and implement a new policy. However, they cite no authority for the fact that, once a right is clearly established, defendants are afforded a grace period before they must comply with the law.

I conclude Johnson has a substantive due process right not to be readmitted to the SRG Program based on the inflexible application of correctional policy without an individual assessment that the policy should be applied to him. Because he alleges that the defendants violated that right, the defendants are not protected by qualified immunity. The motion for summary judgment is denied on that ground.

    C.    <u>Procedural Due Process</u>

The defendants contend that Johnson received all required process at the February 2017 hearing and that his re-admission to the program was not punishment and, therefore, did not violate Johnson's substantive due process rights.

Upon initial review, I let the procedural due process challenge to the disciplinary hearing proceed based on Johnson's claim that he was not afforded the procedural protections identified in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Specifically, Johnson alleged that he was not

provided sufficient notice to prepare a defense and the timing of the hearing was manipulated to prevent him from calling witnesses. Compl., Doc. No. 1 at 10, ¶ 26. Regarding his SRG classification, Johnson alleged that he was not afforded a separate classification hearing and Hearing Officer defendant King did not tell him that he would be designated an SRG member as a result of the disciplinary finding, make a separate SRG finding, or order SRG placement as a sanction. *Id*. at 13, ¶¶ 39-40.

Johnson alleges that he was a pretrial detainee at the time of the hearing. *Id*. at 6, ¶ 3. The defendants do not challenge that status. "[The Second] Circuit has found that procedural due process requires that pretrial detainees can only be subjected to segregation or other heightened restraints if a predeprivation hearing is held to determine whether any rule has been violated." *Johnson v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) (citing *Benjamin v. Fraser*, 264 F.3d 175, 189-90 (2d Cir. 2001)). Where the purpose of the detention is punitive, as with a disciplinary charge, the hearing must comport with the standard in *Wolff*, which requires written notice, time to prepare a defense, a written statement of the reasons for the decision, and a limited right to present witnesses. *Benjamin*, 264 at 190. The notice must be sufficient to enable the inmate to prepare a defense. *Taylor v. Rodriguez*, 238 F.3d 188, 192-93 (2d Cir. 2001).

Johnson alleged that the notice of the disciplinary hearing was insufficient to enable him to prepare a defense and he was denied the opportunity to present witnesses. In support of the motion for summary judgment, the defendants have submitted a copy of the disciplinary report that identified the offense as Security Risk Group Affiliation. That report identified two letters written by Johnson that contained multiple Crip identifiers and specified other items of property that contained Crip identifiers. Defs.' Mem. Ex. A, Doc. No. 36-2 at 2. They also submitted a

13

copy of the incident that states that Johnson was confronted with one item of property and acknowledged ownership of the item. Defs.' Mem. Ex. B, Doc. No. 36-3 at 6. In addition, the SRG Hearing Notification form advised Johnson that the affiliation decision would be based on information from mail monitoring, an SRG picture, and possession of SRG material. Defs.' Mem. Ex. C, Doc. No. 36-4 at 7. Between the disciplinary report and hearing notification form, Johnson was on notice of the basis of the charges. In addition, when interviewed by the disciplinary investigator, Johnson declined assistance of an advocate and requested no witnesses. *Id.* at 4. Because Johnson requested no witnesses, his claim that he was denied due process because the hearing schedule was manipulated to prevent him from calling witnesses lacks merit. I conclude that Johnson received appropriate process at the disciplinary hearing.

Johnson also argues that he was not told that the disciplinary hearing would also be a classification hearing and was not informed of any classification decision. The SRG Membership Hearing Notification form, which Johnson signed on January 30, 2017, specifically informed him that the SRG hearing would be conducted in conjunction with the disciplinary hearing on the charge of SRG affiliation and, if he was found to be an SRG member, he would be subject to the sanctions listed in Administrative Directive 6.14, Security Risk Groups. *Id.* at 7. Following the hearing, Johnson signed the SRG Member Notification of Decision form stating that he had been designated an SRG Crip as a result of the hearing. *Id.* at 8. The evidence of record shows that Johnson received appropriate process in connection with the SRG determination as well. The defendants' motion for summary judgment is granted regarding the due process claims relating to the disciplinary hearing and SRG classification in February 2017.

    D.    <u>Substantive Due Process</u>

The defendants also contend that Johnson's return to the SRG Program in December 2107 was not punitive. Rather, it was an effort to maintain institutional security. As discussed above, the Second Circuit has held that a pretrial detainee may be placed in restrictive housing for a legitimate governmental purpose only after correctional officials make an individualized assessment regarding the risk to institutional security posed by the inmate. *Allah*, 876 F.3d at 56-58. They argue, generally, that SRG inmates pose a threat to institutional safety and security. They do not, however, provide any evidence showing that an individualized assessment was performed on the risk posed by Johnson.

The defendants have submitted the declaration of John Aldi, the Security Risk Group Coordinator at the time of Johnson's re-admission to custody. Defs.' Mem. Ex. L., Doc. No. 36-15. Defendant Aldi describes the procedure followed when an inmate who did not complete the SRG Program before being discharged is re-admitted to custody. *Id.* ¶¶ 23-24. Defendant Aldi states that he is aware that, upon re-admission, Johnson was informed that his affiliation would be reviewed and that he was notified that he would remain on SRG status as an SRG Crip. *Id.* ¶ 25. Defendant Aldi does not indicate whether the decision was made based on a personal assessment or by rote. The defendants have not submitted affidavits from any person who conducted the review or any documentation showing that the review was not merely *pro forma*. Absent such evidence, the defendants have not shown that they are entitled to summary judgment on the substantive due process claim.

E. <u>Personal Involvement</u>

Johnson identifies defendants Feliciano, Mulligan, Santiago, Semple, Walsh, and Stanley as the persons involved in his return to the SRG Program upon re-admission. The defendants

15

note that those defendants all are supervisory officials and argue that Johnson failed to establish their personal involvement.

> To state a claim for supervisory liability, a plaintiff must establish that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the constitutional violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which the unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference … by failing to act on information indicating that unconstitutional acts were occurring.

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *see also Merriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (to impose supervisory liability prisoner must allege that official had actual or constructive notice of unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act).

I permitted that claim to proceed because Johnson alleged that those defendants were involved in his return to the SRG Program upon re-admission despite the holding in *Allah*. In his verified complaint, Johnson alleges that defendants Feliciano and Santiago returned him to segregation as an SRG member upon re-admission. Compl., Doc. No. 1, ¶¶ 53, 55. He further alleges that defendants Semple, Santiago, Walsh, Stanley, Mulligan, and Feliciano have refused or continue to refuse to provide him notice and a hearing. *Id.* ¶¶ 54, 57. He submitted numerous requests to which defendants Walsh, Mulligan, and Stanley responded. *Id.* ¶ 58. Johnson also contends the defendants acted pursuant to a policy, Administrative Directives 6.14(18) and 9.4(18)(D), established by defendant Semple. *Id.* ¶ 60. Johnson has alleged that defendants Feliciano and Santiago directly participated in the alleged constitutional violation (*Colon* factor

16

1); that defendant Semple created or allowed the continuance of the policy under which the constitutional violation occurred (*Colon* factor 3), and defendants Mulligan, Walsh, and Stanley were informed of the violation by Johnson but failed to take any action to remedy the violation (*Colon* factor 2).

Although Johnson's allegations, verified but unsupported by any evidence, cannot overcome a properly supported motion for summary judgment, *Weinstock*, 224 F.2d at 41, the defendants have not submitted any admissible evidence to support their motion for summary judgment regarding personal involvement. For example, they have not submitted the affidavit of any of those defendants indicating their involvement or lack thereof in Johnson's return to the SRG Program.

Absent any evidence contradicting the allegations in the verified complaint, the defendants have not shown that those six defendants were not personally involved in Johnson's substantive due process claim. The motion for summary judgment is denied on that ground.

IV. Conclusion

The defendants' motion for summary judgment [**Doc. No. 36**] is **GRANTED** regarding the due process claims relating to the February 2017 disciplinary hearing and SRG classification and **DENIED** regarding the substantive due process claim for return to the SRG Program upon re-admission. The case will proceed to trial on the substantive due process claim against defendants Feliciano, Santiago, Semple, Mulligan, Walsh, and Stanley. Because there are no remaining claims against defendants King, Harris, Tardiff, Papoosha, and Maldonado, the Clerk is directed to terminate them as defendants in this case.

So ordered.

Dated at Bridgeport, Connecticut, this 12th day of December 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge